IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ENRIQUE VAZQUEZ-RIVERA
ELSIE CHOISNER and the conjugal
partnership comprised of ENRIQUE
VAZQUEZ-RIVERA and ELSIE CHOISNER
WILLIAM VAZQUEZ-CHOISNER
and VANGUARD OPEN MRI, CT
STEREOTACTIC RADIOLOGY
INSTITUTE, INC.

Plaintiffs

vs                                                           CIVIL 05-1277CCC

HON. JORGE SANTINI, MAYOR OF THE
MUNICIPALITY OF SAN JUAN
NANNETTE RODRIGUEZ, ARQ.
BIJAN ASCHRAF,
ROBERTO ALSINA
GERARDO RODRIGUEZ
RAFAEL ESTEVA, all in their official and
individual capacities and their respective
conjugal partnerships composed by them and
their spouses

Defendants

# OPINION AND ORDER

This is an action under 42 U.S.C. § 1983 through which plaintiffs are seeking declaratory relief and monetary damages for defendants' alleged infringement of their federal constitutional rights.  Supplemental claims under the Constitution and laws of Puerto Rico were also raised. Plaintiffs are Enrique Vázquez-Rivera (Vázquez-Rivera), his wife Elsie Choisner (Choisner), their son William G. Vázquez-Choisner (Vázquez-Choisner), and a corporation of which all three individuals are principal stockholders, Vanguard Open MRI, CT, Estereotactic Radiology Institute, Inc. (Vanguard).  Defendants are the Mayor of the Municipality of San Juan, Jorge Santini (Santini), the Director of the Municipality's Department of Urbanism, Nannette Rodríguez (Rodríguez), a technician at said Department, Rafael Esteva (Esteva), and the former

CIVIL 05-1277CCC                              2

and current Directors of the Municipality's Office of Planning and Territorial Organization, Bijan Aschraf (Aschraf) and Roberto Alsina (Alsina), respectively.[1]  All defendants are being sued both in their official and individual capacities.

Before the Court now is a Motion to Dismiss Pursuant to Rule 12(b)(1) of the F.R.C.P. filed by defendants Santini, Rodríguez, Aschraf and Esteva (**docket entry 5**), which Alsina later joined (**docket entry 7**), as well as plaintiffs' Opposition and Cross-Motion for Summary Judgment (**docket entry 10**), and the related reply and sur-reply (**docket entries 12 & 28**).

The pertinent facts, as described by plaintiffs in their complaint (docket entry 1) and later modified in the Statement of Material Facts Which Are Not in Controversy submitted in support of their Cross-Motion for Summary Judgment (**docket entry 10**), follow.  Plaintiffs Vázquez-Rivera and Choisner are owners of a plot of land located at De Diego Avenue in San Francisco, within the boundaries of the Municipality of San Juan (Municipality).  On April 12, 2002, the Administration of Regulations and Permits of the Commonwealth (more commonly known by its Spanish acronym, ARPE), issued to them a Notice of Construction Permit Approval for the construction of a commercial building within their plot, conditioned to the payment of the corresponding municipal taxes and the obtention of workmen's insurance policy.  The building would house medical offices and a radiological center.  While the permit was originally valid for one year from the date of issuance, it was renewed on several occasions and its duration extended until November 2004.

Plaintiffs obtained financing for the project, all applicable permits from various governmental entities, commissioned its construction plans and negotiated the construction contract.  On February 26, 2004, they contracted the builder.  Before construction could commence, however, the Municipality's construction taxes had to be paid.  So, for that purpose,

---

[1]  The action against a sixth defendant, the Municipality's Director of Finances Gerardo Rodríguez, was dismissed on February 6, 2006 for plaintiffs' failure to timely serve him with process.  <u>See</u> docket entries 22 & 23.

on March 16, 2004 plaintiffs visited the offices of the Director of Finances of the Municipality, where their payment was refused until their construction permit was endorsed by the Municipality's Department of Urbanism.  On that same day, plaintiff Vázquez-Rivera went to the offices of the Department of Urbanism to obtain the required endorsement.  There he was informed by its Director, defendant Rodríguez, that since March 13, 2003 the Municipality had adopted a Territorial Organization Regulation with which Mayor Santini was requiring all new projects to comply and, thus, the Municipality's Office of Endorsements and Permits had to review all construction permits to ensure compliance with it.  Under said Regulation, plaintiffs' project was required to maintain a mandatory distance of 2.5 meters (8.2 feet) away from the area of public use, which it failed to keep.

On March 16, 2004, plaintiff Vázquez-Rivera submitted a Request for Comments to the Municipality, explaining all the steps taken to begin construction and why the building's plans could not be altered to meet the Municipality's regulatory requirements.  Apparently in response, on March 17, 2004 Rodríguez wrote to ARPE's sub-administrator, requesting an extension for plaintiffs' construction permit to allow them the opportunity to redesign the project and comply with the municipal requirements.  As the building's construction could not commence as scheduled, on March 30, 2004 the building contractor notified plaintiffs that the delay had increased their costs from 15% to 20%, and that they would not be able to abide by their contract if the situation was not resolved within seven (7) days.  On April 4, 2004, Vázquez-Rivera wrote to the Municipality's Department of Urbanism explaining again that ARPE had issued their permit before the adoption of the Municipality's regulation, and that the project was about to collapse due to the rise in the construction costs, the fact that the president of Vanguard, Dr. Vázquez-Choisner (whose radiological offices would be located at the building) had to decide whether to continue in his employment in Ohio, and given that further delay

CIVIL 05-1277CCC                              4

would require the renewal of other permits and cause the default in contractual commitments with the financing bank, the builder and the electrical contractor.  Plaintiffs also requested a meeting to explore if a solution could be worked out.

On April 29, 2004, Vázquez-Rivera requested from the Municipality's Director of Finance the invoice for the corresponding municipal construction taxes, and renewed his request on May 25, 2004.  As neither of these requests were answered, Vázquez-Rivera then wrote to Rodríguez explaining why he understood that the Municipality lacked the authority to modify or intervene with the permits approved by ARPE.  After several attempts to coordinate a reunion, on June 1, 2004 a meeting was held with defendant Esteva, an attorney for the Municipality and plaintiffs' attorney where the municipal officers agreed to conduct an on-site inspection of the lot but insisted that if the project failed to abide by the 2.5 meters of mandatory separation from the areas of public use they would not endorse the project nor accept the payment of the municipal taxes.  On June 8, 2004, the inspection took place, after which plaintiffs were verbally informed that since the project did not comply with the 2.5 meters of separation required, it would not be endorsed and the municipal taxes would not be received.  The record also contains another letter sent by plaintiff Vázquez-Rivera to Rodríguez, dated June 20, 2004, where he reasserted all his previous arguments and requested that the situation be objectively evaluated by the Municipality.  It appears that no further actions were taken by plaintiffs until their filing of this suit on March 11, 2005.

In their complaint, plaintiffs repeatedly assert that during defendants' consideration of their request for municipal endorsement of their construction permit they were required to comply with various dispositions of Puerto Rico's Uniform Administrative Procedure Act (UAPA), 3 L.P.R.A. §§2101 et. seq., but simply failed to do so, and that defendants lacked jurisdiction to deny the endorsement of their construction permit under Puerto Rico's Autonomous Municipalities Act (AMA), 21 L.P.R.A. §§4001 et. seq.  Plaintiffs claim that defendants' disregard of the administrative procedures established in Puerto Rico's UAPA

CIVIL 05-1277CCC                      5

violated their procedural due process rights, while defendants' failure to allow the development
of their project and the enjoyment and economic exploitation of their property infringed their
substantive due process rights.

Defendants have moved for dismissal of the complaint (**docket entry 5**), and their core
contention in support of dismissal is based on their perception of plaintiffs' claims as being based
on the Takings Clause of the Fifth and Fourteenth Amendment.[2]   Relying on the principles
established in Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 105 S.Ct. 3108
(1985), defendants aver that plaintiffs' claims are not ripe for resolution given that they have
allegedly failed to exhaust available state remedies which would allow them to obtain just
compensation for the purported taking.  However, our review of the complaint's allegations
describing plaintiffs' causes of actions, i.e. Complaint (docket entry 1), ¶¶40-44, reveals that
none are specifically based on the Takings Clause, but on procedural and substantive Due
Process.  Plaintiffs, in fact, have reasserted in their response to the motion to dismiss (see docket
entry 10, at pp. 4-6) that they are not alleging that defendants either directly appropriated or
ousted them from their property, the traditional "physical" taking, or that defendants' regulation
of their property was so onerous that its effect was tantamount to a direct appropriation or
ouster, a "regulatory" taking.  See generally Lingle v. Chevron U.S.A., Inc., 125 S.Ct. 2074,
2081 (2005).  Rather, plaintiffs insist that their claims are based on the alleged deprivation of
their procedural and substantive due process rights, although in doing so they loosely refer to

_____

[2] This categorization is not entirely baseless, as plaintiffs' complaint contains at least one
conspicuous allegation stating that defendants' actions constituted a "taking of property without due
process of law."  Complaint (docket entry 1), at ¶ 32. But, as the Supreme Court made pellucidly
clear in Lingle v. Chevron U.S.A., Inc., 125 S.Ct. 2074, 2083 (2005), due process and takings
inquiries are distinct and should not be commingled.  After all, the Takings Clause, by providing that
private property shall not be taken for public use without just compensation, does not bar
government from interfering with property rights, but rather requires compensation in the event of
otherwise proper interference amounting to a taking.  Under the Due Process Clause, however, if
a government action is found to be impermissible because it is arbitrary, that is the end of the
inquiry. No amount of compensation can authorize such action.  Id., at 2084.

CIVIL 05-1277CCC                    6

the due process violations as resulting in a "Taking without Due Process of Law," id., at p. 6, which they had also done in the Complaint. See footnote 4, supra. Still, the Complaint having particularly stated causes of action under the Due Process Clause, and plaintiffs having reiterated in their subsequent filing that those are their claims for relief, we will not add to their allegations theories of relief not specifically pled. Thus, to the extent that defendants' dispositive motion seeks dismissal of a non-pleaded Takings Clause claim, the same must be DENIED.

This notwithstanding, defendants' dispositive motion also asks for the dismissal of plaintiffs' due process claims, albeit tersely. Their reasons in support for the elimination of these claims were not expounded until they replied to plaintiffs' opposition (**docket entry 12**). In essence, defendants aver that plaintiffs have failed to state claims under either the procedural or the substantive prongs of the Due Process Clause. We agree.

As to the procedural due process claim, we start by noting that plaintiffs' allegations are that the laws of Puerto Rico establish a procedure that defendants were required to follow in order to deny the endorsement of their construction permit, but that they failed to abide by it. Complaint, at ¶¶33, 35, 36, 41. Plaintiffs do not claim that the procedure established by Puerto Rico law failed to comply with the requirements of the Due Process Clause. Their postulate is, instead, that defendants' neglect in complying with Puerto Rico law deprived them of their due process rights.

"Mere violations of state law do not, of course, create constitutional claims." Roy v. City of Augusta, 712 F.2d 1517, 1522-23 (1st Cir.1983). Consequently, it is an established principle that courts will not find a denial of due process in a deprivation of property case when the procedures in place are adequate, and the deprivation is the result of the failure of the state's agents to follow that procedure. That is precisely the situation before us, as plaintiffs have not complained of the adequacy of the procedures provided by Puerto Rico law, but only of defendants' refusal to observe them. It is undisputed, however, that Puerto Rico has a judicial

CIVIL 05-1277CCC                                 7

procedure available to review the actions (or inactions) of defendants, as plaintiffs themselves

have recognized.  See Response in Opposition to Motion to Dismiss (docket entry 10), at p. 7.

Section 15.002 of the Autonomous Municipalities Act, 21 L.P.R.A. §4702, provides in part:

> (1) The Court of First Instance of Puerto Rico shall hear and resolve, with exclusivity, at the request of the injured party, over the following matters:
>
> (a) Review any legislative or administrative action of any municipal official or organism that damages the constitutional rights of the claimants, or that is contrary to the laws of Puerto Rico.
>
> (b) Stay the execution of any ordinance, resolution, agreement, or order of the Legislature, the mayor, or of any municipal official who damages the guaranteed (sic) by the Constitution of the Commonwealth of Puerto Rico, or state laws.
>
> (c) To compel municipal officials to fulfill their ministerial duties.
>
> (d) To resolve, by plenary action, the suits filed for damage claims for acts or omissions by officials or employees of a municipality do to malice, negligence or unexcusable ignorance.

While plaintiffs make much ado about not being able to pursue the remedies available

under subsection (1)(a) of said section until defendants notified them formally of the denial of

the endorsement of their construction permit, they do not explain why they forgo the remedy

to compel the municipal officials to act under subsection (1)(c).  It is not farfetched to assume

that if the inaction of the defendant municipal officials described in the complaint actually took

place, a proceeding by plaintiffs under subsection (1)(c) would have resulted in a judicial

mandate for defendants to discharge their duties and either formally accept or deny the

endorsement of plaintiffs' construction permit.  In the event of a denial, plaintiffs would then

have been able to initiate a proceeding under subsection (1)(a).  They, however, opted not to

utilize Puerto Rico's judicial remedies, and therefore Puerto Rico has not yet refused to provide

them with review and redress.  Thus, plaintiffs cannot argue here that they have been deprived

of property without due process.  See e.g. Parratt v. Taylor, 451 U.S. 527, 543, 101 S.Ct.

1908, 1916, 68 L.Ed.2d 420 (1981) (loss occurring as the result of unauthorized failure of

state agents to follow established state procedure does not constitute a violation of Fourteenth

CIVIL 05-1277CCC                              8

Amendment due process if the state provides plaintiff with a means by which to redress the

deprivation).  As the Court of Appeals observed in Roy v. City of Augusta, Maine, 712 F.2d

1517, 1523 (1st Cir. 1983),

> [H]ere, the dispute concerned locally issued permits and approvals, the denial of
> which were subject to review by the state judiciary. If by portraying such disputes
> as the taking of property without due process, every disgruntled applicant could
> move them into the federal courts, even when the state provided adequate
> procedures, any meaningful separation between federal and state jurisdiction
> would cease to hold and forum shopping would become the order of the day.

Thus, plaintiffs having failed to state a procedural due process claim, their claims in that regard

are ORDERED DISMISSED.

We turn now to the substantive due process right, which plaintiffs insist was infringed

when defendants failed to endorse their construction permit since in doing so they deprived

them "of the use and enjoyment of their property, developing their project, establishing a

business and to engage in free enterprise" and "caus[ed] them considerable economic damages,

loss of investment, loss of rental value of the land, loss of projected income and loss of use and

economic exploitation of their property."  Complaint, at ¶42.

The Court of Appeals recently explained the limits on substantive due process claims

arising from land-use disputes:

> This Court has repeatedly held that rejections of development projects and
> refusals to issue building permits do not ordinarily implicate substantive due
> process. Even where state officials have allegedly violated state law or
> administrative procedures, such violations do not ordinarily rise to the level of a
> constitutional deprivation. The doctrine of substantive due process does not
> protect individuals from all governmental actions that infringe liberty or injure
> property in violation of some law. Rather, substantive due process prevents
> governmental power from being used for purposes of oppression, or abuse of
> government power that shocks the conscience, or action that is legally irrational
> in that it is not sufficiently keyed to any legitimate state interest. Although we
> have the left door slightly ajar for federal relief in truly horrendous situations, the
> threshold for establishing the requisite abuse of government power is a high one
> indeed.

 SFW Arecibo Ltd. v. Rodriguez, 415 F.3d 135, 141 (1st Cir.2005) (internal citations

omitted).

CIVIL 05-1277CCC                    9

        More recently, in <u>Torromeo v. Town of Fremont</u>, ___ F.3d. ___ (1st Cir. 2006), 2006 WL 390446, the Court of Appeals faced a factual scenario similar to the one before us.  There, plaintiffs alleged that the defendant Town had violated substantive due process by enacting a growth control ordinance without following the procedures mandated by New Hampshire law. Since the claim was only that the Town's violation of state law caused plaintiffs harm, the Court of Appeals concluded that it was not enough to state a substantive due process claim.  Here, plaintiffs' allegations are that defendants did not follow the applicable state procedures when they were asked to endorse the construction permit, Complaint, at ¶¶ 33, 35 & 37, and that they were without jurisdiction to deny the endorsement of the permit as it had already been approved by ARPE before the new municipal regulations became effective, Complaint, at ¶¶ 22, 34, and had also been endorsed by other state agencies, Complaint, at ¶ 38.  <u>See also</u> plaintiffs' Cross-Motion for Summary Judgment (docket entry 10), pp. 10-13.  Thus, given that plaintiffs' only claim is that the municipal officers' violation of state law caused them harm, they have also failed to state a substantive due process claim.  <u>See also</u> the following cases cited in <u>Torromeo</u>: <u>Licari v. Ferruzzi</u>, 22 F.3d 344, 349 (1st Cir.1994)(affirming dismissal of substantive due process claim based on allegations that a town planning board improperly revoked the developer's building permits and delayed processing and approval of an application for an amended permit); <u>PFZ Properties, Inc. v. Rodríguez</u>, 928 F.2d 28, 32 (1st Cir.1991) (affirming dismissal of substantive due process claim were developer alleged that government agency failed to comply with agency regulations or practices in the review and approval process of construction plans).  As a result, plaintiffs' substantive due process claims are ORDERED DISMISSED.

        We need go no further.  For the reasons stated, defendants' Motion to Dismiss (**docket entry 5**) is GRANTED and plaintiffs' Cross-Motion for Summary Judgment (**docket entry 10**)

CIVIL 05-1277CCC                                    10

is DENIED.  Accordingly, judgment will be entered DISMISSING plaintiffs' claims under the Due Process Clause of the U.S. Constitution with prejudice.  Their claims under the Constitution and laws of Puerto Rico, however, are DISMISSED without prejudice.

SO ORDERED.

At San Juan, Puerto Rico, on March 27, 2006.

S/CARMEN CONSUELO CEREZO
United States District Judge